```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF LOUISIANA
```

DAVID MOUNT                                          CIVIL ACTION

VERSUS                                               NO. 11-3003

APACHE CORPORATION                                   SECTION "F"

ORDER AND REASONS

Before the Court is Apache Corporation's motion for summary judgment. For the reasons that follow, the motion is GRANTED.

Background

This dispute arises out of personal injuries that were allegedly sustained while working aboard a vessel.

On January 18, 2011, David Mount slipped and fell while performing his duties on the deck of the SP 65A platform, which is owned by Apache Corporation. Mr. Mount alleges that he slipped in condensate, measuring approximately one and a half feet in diameter, from the fuel gas filter located near the compressor.[1] The fuel gas filter has no automatic system in place to drain accumulated condensate and, therefore, it must be manually drained. There is also no level controller or float device that shuts off the filter in the event of accumulating condensate. The record indicates that no member of the platform

---

[1] The filtered fuel gas is used to operate the platform compressor unit, which compresses oil and gas for insertion into the pipeline.

1

crew had been assigned to manually drain the filter because of condensate buildup.[2]

At the time of the accident, Mr. Mount was employed by Island Operating Company as a "B" Operator. Pursuant to a contract entered into in 2003, Island agreed to provide Apache with personnel to operate its oil and gas platforms. Mr. Mount was assigned to Apache's SP 65A platform, and was part of a four-person crew that worked on the rig in seven-day periods. The four-person crew consisted of three Island employees (Mr. Mount, Ronald J. Stump, and George Raylon Parsons) and one Apache employee (Keith Deville); Mr. Deville, the Apache employee, was the "Person in Charge" on the Apache platform. As a result of the fall on January 18, Mr. Mount allegedly sustained injuries and reported the incident to Mr. Deville. An Apache Offshore Loss Occurrence Report was completed the following day on January 19, 2011.

On December 6, 2011, Mr. Mount sued Apache in this Court, alleging claims of negligence under the Longshore and Harbor Workers' Compensation Act. Apache now moves for summary judgment on plaintiff's claims.

## I. Legal Standard

Federal Rule of Civil Procedure 56 instructs that summary

---

[2] Defendant contends that condensate buildup is a rare occurrence on any platform in the Gulf of Mexico.

judgment is proper if the record discloses no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986). A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. Id. at 249-50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. Id. Hearsay evidence and unsworn documents do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549

(5th Cir. 1987). Finally, in evaluating the summary judgment motion, the Court must read the facts in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255.

## II. Discussion

Defendant contends that summary judgment is appropriate because plaintiff was a borrowed employee at the time of the accident. The Court agrees.

*A.*

Under the Longshore and Harbor Workers Compensation Act, workers' compensation is the exclusive remedy for an employee against his employer. See 33 U.S.C. § 905(a) (2006). The Fifth Circuit has extended this tort immunity provision to include borrowing employers under the "borrowed employee" doctrine. Total Marine Servs., Inc. v. Dir., Office of Worker's Comp. Programs, 877 F.3d 774, 777 (5th Cir. 1996). If the plaintiff was a borrowed employee, then Apache would be free from liability.

The Fifth Circuit has articulated nine factors for a district court to consider in determining whether a borrowed employee relationship exists:

> (1) Who has control over the employee and the work he is performing, beyond mere suggestion of details or cooperation?
> (2) Whose work is being performed?
> (3) Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?

4

(4) Did the employee acquiesce in the new work situation?

(5) Did the original employer terminate his relationship with the employee?

(6) Who furnished tools and place for performance?

(7) Was the new employment over a considerable length of time?

(8) Who had the right to discharge the employee?

(9) Who had the obligation to pay the employee?

Ruiz v. Shell Oil Co., 413 F.2d 310, 312-13 (5th Cir. 1969); see also Melancon v. Amoco Prod. Co., 834 F.2d 1238, 1244 (5th Cir. 1988). No one factor is dispositive; however, courts place the most emphasis on the first factor, which examines the amount of control over the employee. Brown v. Union Oil Co. of Cal., 984 F.2d 674, 676 (5th Cir. 1993); Melancon, 834 F.3d at 1244-45. Borrowed employee status is a question of law, but the nine-factor analysis needed to answer that question is fact-driven; summary judgment is appropriate if no genuine issue exists as to any of the facts concerning each factor. Melancon, 834 F.3d at 1244; Capps v. N.L. Baroid-NL Indus., Inc., 784 F.2d 615, 617 (5th Cir. 1986).

B.

The Court finds that the defendant has carried its burden for summary judgment on borrowed employee status:

*(1) Who had control over the employee and the work he is performing?*

Defendant asserts that Keith Deville, Apache's Person in Charge, controlled plaintiff and the work he was performing.

Plaintiff contends that Raylon Parson, an Island operator, was his supervisor and, therefore, Apache did not have control over him. For support, plaintiff points to the record in which he testified that his lead operator was Raylon Parson when the accident happened; however, plaintiff later testified that Apache's Person in Charge, Keith Deville, was the "main guy out there that was, you know overseeing everything." Moreover, plaintiff later stated that Mr. Deville was the person who made the decisions on the platform as to what work needed to be done.[3]

The relative rank of borrowed employees as to *each other* is not the inquiry; rather, the issue is whether all borrowed employees are under the control of the borrowing employer. The record reveals that all three of the Island operators, including plaintiff, received their daily instructions as to what work is

---

[3] The record clearly indicates that Apache was in control of the plaintiff and the work he was performing:
   Q: Let's just take, for example, one platform function that's done pretty regularly, like MMS testing.
   A: Uh-huh.
   Q: You did MMS testing?
   A: Yes, sir.
   Q: If there was going to be MMS testing done on the platform at a given time, who made that decision to do the MMS testing?
   A: Apache—well, Keith—
   Q: Keith Deville?
   A: Keith. He would line Raylon up with what, you know, what needed to be done, then Raylon would send me and the other guy out there, you know.

to be performed from Apache.[4]  Plaintiff himself unequivocally stated that "everything went through [Keith], you know, before you did anything."  According to the record, if any problems arose, the Island operators were to notify the Apache Person in Charge.  In fact, plaintiff testified that he reported the accident in question to Mr. Deville "because he was the PIC."  An Apache Offshore Loss Occurrence Report was completed in connection with plaintiff's accident, and the form lists Mr. Deville as the immediate supervisor.  Moreover, while on the SP 65A platform, Island operators had to read and sign the Apache operations manual, and all operators were required to follow Apache's safety procedures.  Island operators even had to attend weekly Apache safety meetings conduced by Apache supervisory personnel.  Further, Apache supervisors ranked above Mr. Deville would also make periodic visits to the platform to oversee the work of all Island operators.  During the course of their work, Island operators were required to complete various Apache charts

---

[4] Regarding day-to-day duties, the deposition testimony of Raylon Parsons states that he would do "whatever Keith Deville decided [he] needed to do."
    Q: When would [Keith] tell you what to do?
    A: First thing in the morning and all during the day because, I mean, Keith was a hands-on person.  He was out with us doing the jobs.  As he saw a task coming up, he would–you know, as we would finish a job, he would reassign job duties, I mean.
    Q: How often would there be a reassignment of job duties?
    A: Maybe twice a day.

and checklists.

Even construing the facts in a light most favorable to the plaintiff, the Court cannot find, based on this record, a genuine dispute of material fact as to who controlled the plaintiff and the work he was doing. This factor weighs in favor of the borrowed employee status.

*(2) Whose work was being performed?*

Apache was the owner of the SP 65A platform. As such, there is no genuine dispute that it was Apache's work being done. This factor also lends support to the existence of a borrowed employee relationship.

*(3) Was there an agreement or understanding between Island Company and Apache as to the employee's status?*

The contract between Island and Apache states that Island is to be an independent contractor. The Fifth Circuit has expressly stated that "parties to a contract cannot automatically prevent a legal status like 'borrowed employee' from arising merely by saying in a provision in their contract that it cannot arise." Melancon, 834 F.2d at 1245. "The parties' actions in carrying out the contract can impliedly modify or waive the express provision." Brown, 984 F.2d at 677-78.

The Court finds that Apache both impliedly modified the contract through its actions (that is, directed the plaintiff's day-to-day activities, provided plaintiff with food and lodging, transported plaintiff to and from the platform), and expressly

8

modified the contract by a letter agreement dated July 10, 2007, which amended the 2003 master contract between Island and Apache to include a provision that directly stated that Apache was the statutory employer of Island employees. See Billizon v. Conoco, Inc., No. 91-2749, 1992 WL 516078, at *2 (E.D. La. Sept. 30, 1992) (finding that the defendant's actions of supervising plaintiff's work, providing food and lodging, and transporting plaintiff to and from shore sufficient to modify the contract provision); see also Melancon, 834 F.2d at 1245 (finding that the plaintiff's original employer clearly understood that the plaintiff would be taking his instructions from the borrowed employer, notwithstanding the contract's independent contractor provision). This factor also favors borrowed employee status.

*(4) Did plaintiff acquiesce in the new work situation?*

The focus of this factor is whether the employee was aware of his work conditions and chose to continue working in them. Brown, 984 F.2d at 678; Melancon, 834 F.2d at 1246. Here, plaintiff began working on the SP 65A shortly after he was hired by Island in November 2008. At that time, SP 65A was owned by another company, but Apache later acquired the platform on October 1, 2010, which was three and half months before plaintiff's accident. In that time period, it is undisputed that plaintiff worked in seven-day periods on the platform and never once complained about his working conditions. Melancon, 834 F.2d

9

at 1246 (holding that plaintiff acquiesced in his work situation because he made no complaints about the working conditions). Moreover, the Fifth Circuit has expressly stated that one month is a sufficient amount of time for an employee to appreciate his new work conditions, and plaintiff surpasses such a time period here.  Brown, 984 F.2d at 678; see also Capps, 784 F.2d at 616-17 (finding one day sufficient for plaintiff to acquiesce to the work conditions because he was employed by a company that constantly sent him into new work environments).  Therefore, no genuine dispute exists that Mr. Mount acquiesced to his working conditions, and this factor also supports the borrowed employee status.

*(5) Did Island relinquish control over the plaintiff?*

This inquiry does not require a lending employer to completely sever its relationship with the employee, because such a requirement would effectively eliminate the borrowed employee doctrine as there could never be two employers.  Capps, 784 F.2d at 617.  Rather, the focus should be on the "lender employer's relationship with the employee while the borrowing occurs."  Id. at 618.  Island's control over Mr. Mount was nominal at most while Mount worked for Apache.  Moreover, if an Island operator needed to leave the platform before his seven-day period was over, he had to notify and obtain permission from his Apache supervisor, not Island.  Island also had little knowledge

regarding Mr. Mount's daily work performance and responsibilities.  See Allen v. Texaco, Inc., No. 99-1456, 2001 WL 611391, at *6 (E.D. La. June 5, 2001) (finding that the original employer relinquished control because it had little knowledge about plaintiff's daily activities, performance, and responsibilities, and the occasional phone call or visit did not defeat such a finding); Hardin v. Conoco, Inc., 712 F. Supp. 1240, 1244 (W.D. La. 1989) (holding that the original employer terminated its relationship with the plaintiff even though the plaintiff had to deliver his time sheet and pick up his check from the original employer).  Thus, no genuine dispute exists that Island relinquished control over the plaintiff, and this factor favors the borrowed employee status.

*(6) Who furnished the plaintiff's tools and place to work?*

The balance on this factor also heavily tips in favor of Apache, because Apache provided all the necessary equipment and tools for Mr. Mount to use while working.  Moreover, Apache provided the place for performance, transportation to and from the platform, and all meals and sleeping accommodations.  Brown, 984 F.2d at 679.

*(7) Was the employment over a considerable length of time?*

The Fifth Circuit has held that when the length of employment is considerable, this factor supports a finding that the employee is a borrowed employee.  Capps, 784 F.2d at 618.

11

Here, plaintiff worked exclusively on the SP 65A platform for approximately one year; three and a half months of this period Apache owned the platform.  Courts have not defined what constitutes a considerable length of time, but, as previously mentioned, courts have found one month of employment (and even one day of employment) sufficient to find a borrowed employee relationship.   See Brown, 984 F.2d at 678; Capps, 784 F.2d at 616-17.  Therefore, the Court finds that this factor lends support to the borrowed employee status.

*(8) Who had the right to terminate the plaintiff?*

This inquiry focuses on whether the borrower has the right to terminate the borrowed employee's services.  See Melancon, 834 F.2d at 1246; Capps, 784 F.2d at 618.  The record establishes that Apache had the right to discharge Island operators from the platform if Apache was dissatisfied with their work.  Apache could also ask for a replacement Island operator.  No genuine dispute exists as to this factor.

*(9) Who paid the plaintiff?*

Fifth Circuit precedent provides that this factor supports a finding of the borrowed employee status when the original employer is reimbursed by the borrowing employer for the services of the employee.   See, e.g., Brown, 984 F.2d at 679; Melancon, 834 F.2d at 1246; Capps, 784 F.2d at 618; Robertson v. Blanchard Contractors, Inc., No. 11-1453, 2012 WL 6202988, at *8 (E.D. La.

Dec. 12, 2012); Billizon, 1992 WL 516078, at *3.  Here, Island operators received their checks from Island, but Apache reimbursed Island and approved the pay scale for each operator.  Based on this record, no genuine dispute exists as to this factor.

In sum, the Court finds that there are no genuine issues of material fact as to the borrowed employee status of Mr. Mount.  His situation fits squarely within the precedent of this Circuit for granting summary judgment on the issue of borrowed employee tort immunity.  See Brown, 984 F.2d at 678 n.5; Capps, 784 F.2d at 617; Jones v. Coastal Cargo Co., No. 10-4383, 2011 WL 3654397, at *3-4 (E.D. La. Aug. 19, 2011); Billizon, 1992 WL 516078, at *4.  Accordingly, the defendant's motion is GRANTED.

New Orleans, Louisiana, January 9, 2013

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE